IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERRI K. JORDAN,              *
                               *
      Plaintiff,               *
                               *
vs.                            *    CIVIL ACTION 11-00302-B
                               *
MICHAEL J. ASTRUE,             *
Commissioner of Social Security, *
                               *
      Defendant.               *

<u>ORDER</u>

Plaintiff Sherri K. Jordan ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, <u>et</u> <u>seq</u>. On March 26, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636 (c). (Doc. 19). Oral argument was waived. Upon careful consideration of the administrative record and the arguments and briefs of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   **<u>Procedural History</u>**

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on February 21, 2007. (Tr. 166). Plaintiff alleges that she has been disabled since October 4, 2004, due to bipolar disorder. (<u>Id.</u> at 56, 153, 165). Plaintiff's applications were denied at the initial stage and upon reconsideration. (<u>Id.</u> at 102-06). She filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (<u>Id.</u> at 109). On June 8, 2009, Administrative Law Judge Ricardo Ryan held an administrative hearing, which was attended by Plaintiff, her attorney, and vocational expert, Barry Murphy. (<u>Id.</u> at 46-69). The ALJ determined that Plaintiff should be evaluated by a psychologist. Therefore, the hearing was continued. ALJ Ryan held a second administrative hearing on October 26, 2009, which was attended by Plaintiff, her attorney, and vocational expert, Sue Berthaume. (<u>Id.</u> at 25-44). On November 3, 2009, the ALJ[1] issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 11-24). Plaintiff's request for review was denied by the Appeals Council ("AC") on April 13, 2011. (<u>Id.</u> at 1-6).

---

[1] The opinion was signed by ALJ Ben E. Sheely, on behalf of ALJ Ryan.

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist?

## III. Factual Background

Plaintiff was born on February 12, 1967, and was forty-two (42) years of age at the time of both administrative hearings. (Tr. 28, 49, 96-98, 145).  She has a 12th grade education and past relevant work ("PRW") as a clerk, cashier, and bagger. (Id. at 175, 191, 234).  According to Plaintiff, she last worked in 2004 as a counter clerk at a drycleaners. (Id. at 54). Plaintiff took a medical leave from the position.  (Id.).

At the June 8, 2009 hearing, Plaintiff testified that she is 5'1" and weighs 170 pounds, which is approximately 55 pounds above her normal weight.  Plaintiff attributed her weight gain to her current medications.  (Id. at 50).

Plaintiff further testified that she resides with her parents and her two children ages 8 and 13. (Id. at 51, 57). According to Plaintiff, she experiences a lot of anxiety, but does well with her parents, children, and other family members with whom she lives.  (Id. at 57-58).  Plaintiff reported that she takes medications to prevent her from "going into mania."

(Id. at 58).   According to Plaintiff, when she is "manic", she engages in  reckless behavior such as drug use and risky sexual behavior.  (Id. at 58-59).  Plaintiff testified that she last experienced "true mania" in October 2004, and she had a slight case of "mania" which lasted about a week and a half at the end of 2007.  (Id.).  Plaintiff acknowledged that she is stable on her medications, that "the medicines are working," and that she is able to perform daily activities.  (Id. at 60-64).  Plaintiff testified that she can perform most household chores, including cleaning the house, occasionally cooking for her children, and doing laundry.  She further testified that she does not go out often, and that she is generally at home taking care of her children or reading books.  (Id. at 63-64).  Additionally, Plaintiff testified that her parents take care of her financial obligations.  (Id. at 52).

At the October 26, 2009 hearing, Plaintiff confirmed that her last "manic" episode was in December 2007 and that it lasted about two weeks.  Plaintiff also testified that she has been on Risperdal[2] three or four years, and it "keeps [her] pretty stable."  (Id. at 30-31).  Plaintiff further reported that she

_____

[2] Risperdal is used to treat schizophrenia and symptoms of bipolar disorder (manic depression).  See http://www.drugs.com/risperdal.html. (Last visited September 27, 2012).

takes Trazodone[3] at night to help her sleep, and because the medicine makes her sleepy, sluggish, and tired and causes migraines, she is not able to work. (Id. at 32, 36-37). According to Plaintiff, she generally takes a nap during the day, but she can forgo a nap if she has to go somewhere. (Id. at 37-38).

IV.  **Analysis**

   A.  **Standard Of Review**

   In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[4]  A court  may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.

---

   [3]  Trazodone is a serotonin modulator used to treat depression. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html (Last visited September 27, 2012).

   [4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 20 C.F.R. 404.1505(a), 20 C.F.R. 416.905(a). The Social Security regulations provide a five-step

sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[5]

In the case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits through September 30, 2009. (Tr. 16). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Id.) The ALJ concluded that while Plaintiff has the severe impairment of bipolar disorder,

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

it does not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.[6] (Id. at 16-18).

The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. The ALJ also determined that Plaintiff has the following non-exertional limitations: she is limited to work which only requires her to perform simple (one and two step) routine tasks; to occasionally interact with the general public; to have non-confrontational supervision; to work independently (although she can work in close proximity to co-workers); and to have occasional changes in the routine work setting. (Id. at 18-19).

The ALJ next determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Id. at 19). The ALJ concluded that Plaintiff's RFC precludes her from performing any of her past work. (Id. at 22). Relying on the testimony of the VE, the ALJ concluded

---

[6] The ALJ determined that Plaintiff's past history of drug and alcohol abuse, as well as her diagnosed acute bronchitis and sinusitis, were non-severe impairments. (Id. at 16-17).

that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as cleaner/housekeeper, production assembler, and microfilm processor. (Id. at 23). The ALJ thus concluded that Plaintiff is not disabled.

### 1. **Medical Evidence**

The relevant evidence of record reflects that Plaintiff was treated by Singing River Services ("SRS") November 2004 through September 2009. (Tr. 235-313, 339-42, 359-74, 378-91). While at SRS, Plaintiff was treated by psychiatrist Roy Barnes, M.D. (hereinafter "Dr. Barnes") and Rose Marie Morton, MMSW (hereinafter "Ms. Morton").

Plaintiff was treated at SRS on November 10, 2004 following a drug-related automobile accident. Notes taken at intake reflect that Plaintiff had cocaine and methamphetamine in her system. Plaintiff was diagnosed with moderate bipolar disorder, polysubstance dependence, and sinus problems, and was prescribed Paxil[7], Risperdal, and Seroquel.[8] Plaintiff was directed to

---

[7] Paxil is an antidepressant that affects chemicals in the brain that may become unbalanced and is used to treat depression, obsessive-compulsive disorder, anxiety disorders, post-traumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD). See http://www.drugs.com/paxil.html. (Last visited September 27, 2012).

complete a twenty-week Dual Disorder Group Program and to continue AA meetings. (Id. at 241, 245-54). Plaintiff was provided mental health treatment again on December 10 and 28, 2004. (Id. at 241, 274). During the December 10, 2004 visit, Plaintiff's GAF[9] score was 60. (Id. at 241).

At some point, Plaintiff was prescribed Lexapro[10], but on May 17, 2005, she was directed to cease Lexapro and to continue treatment with Seroquel and Lithium.[11] (Id. at 270). A SRS

---

[8] The record also reflects that in 2001, SRS diagnosed Plaintiff with ADHD and prescribed Ritalin. (Id. at 246, 394).

[9] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job). A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61-70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See http://www.gafscore.com/. (Last visited September 27, 2012).

[10] Lexapro is an antidepressant affecting chemicals in the brain that may become unbalanced and cause depression or anxiety. See http://www.drugs.com/lexapro.html. (Last visited September 27, 2012).

[11] Lithium is used to treat the manic episodes of manic depression by affecting the flow of sodium through nerve and (Continued)

therapist's treatment notes dated December 8 and December 30, 2005 reflect that Plaintiff reported she had been sober since beginning treatment except for one relapse during Hurricane Katrina.  Her GAF score was noted as 60.  Plaintiff further reported she was compliant with medications and that the medications controlled her "manic" symptoms.  Plaintiff also reported that she was sluggish during the day and gaining weight.  She was directed to attend the medical clinic at least once a year to monitor or adjust prescriptions and to be evaluated one-on-one bi-monthly to help learn effective coping skills and to monitor relapses.  (Id. at 239-40).  The treatment notes dated September 13 and December 13, 2005 reflect that Plaintiff was compliant with her medications, and she was doing well, although she reported that she had experienced some anxiety for the last several weeks and could feel herself becoming "manic".  (Id. at 265-67).

The February 21 and May 23, 2006 treatment notes reflect that Plaintiff was compliant with her medications, Tegretol, Trazodone, and Seroquel, and that she was "doing well."  (Id. at 261, 263).  In treatment notes dated December 13, 2006, Ms. Morton diagnosed Plaintiff with bipolar I disorder, hypomania,

---

muscle cells in the body. See http://www.drugs.com/lithium.html. (Last visited September 27, 2012).

polysubstance dependence, and sinus headaches, and assigned a GAF of 65. (Id. at 238). The treatment notes also reflect that Plaintiff reported that she felt "slow" when taking her prescribed medications and often had to force herself to take them. Plaintiff also reported that she gets irritable twice a month when taking her medication. Ms. Morton noted that Plaintiff's symptoms interfered with her ability to work and with her social functioning. (Id.)

On January 2, 2007, Plaintiff reported that Tegretol was not working. (Id. at 259, 374). During April 18 and June 13, 2007 visits, Plaintiff reported that she was doing well on her current medications. (Id. at 368-69). On September 12, 2007, Plaintiff reported to Dr. Barnes that she felt nervous all the time and was very anxious. The October 9, 2007 treatment notes reflect that Plaintiff reported to Dr. Barnes that she was doing well. The notes also reflect that Plaintiff was stable. (Id. at 366-67).

On June 28, 2007, Ms. Morton and Dr. Barnes completed an abilities questionnaire at the request of the Agency. (Id. at 339-42). Both opined that Plaintiff has "poor" ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention/ concentration. (Id. at 341). They reported that Plaintiff goes into mania

under stressful situations, even while on medication, and will go into rages. (Id.). They also reported that Plaintiff does not handle authority well. (Id.). They opined that Plaintiff's ability to understand, remember and carry out complex job instructions and detailed, but not complex, job instructions was "poor," while her ability to understand, remember, and carry out simple job instructions was "fair." (Id.). In addition, they noted that Plaintiff has extreme memory problems, that she cannot concentrate, that she has racing thoughts when manic, and that she is unable to multi-task. (Id.). They also noted that Plaintiff's ability to maintain personal appearance was "good," her ability to relate predictably in social situations was "fair," and her ability to behave in an emotionally stable manner and demonstrate reliability was "poor." (Id.).

The also noted that Plaintiff forgets her appointments. Her family has to remind her to take her medications, and she often has anger or rage with no cause which can be easily triggered. (Id.). Dr. Barnes and Ms. Morton observed that treatment was helpful to Plaintiff and medications help but do not fully control moods. (Id. at 342). They further observed that Plaintiff "is learning about the disorder and identifying triggers, trying to avoid stressful situations which could set her off." (Id. at 342).

Plaintiff was evaluated by Dr. Barnes on January 8, 2008 and the treatment notes reflect that she was "doing good" and was stable. (Id. at 365). SRS treatment notes completed by Patricia J. Wall, M.S., and dated January 11, 2008 reflect that Plaintiff became manic at the end of 2007 and experienced a relapse. (Id. at 361). During that time, Plaintiff abused Klonapin, Lortab, and cocaine. (Id.). Ms. Wall identified Plaintiff's GAF score at 45. (Id.). Plaintiff reported she was on a binge for a week and a half whereas, in the past, her manic episodes would last for months. (Id.). She was directed to see Dr. Barnes twice a year to monitor symptoms and adjust medications as needed, to take medications as prescribed, to report any uncontrolled symptoms or side effects to staff, to continue individual therapy, and to work toward goals set during therapy. (Id. at 361-62).

On February 28, 2008, Ms. Morton completed a RFC Questionnaire, wherein she listed Plaintiff's diagnosis as bipolar I disorder and opined that Plaintiff has no restrictions in activities of daily living and that she had a "moderate" degree of difficulty in maintaining social functioning. (Id. at 376). Ms. Morton further opined that Plaintiff experienced "marked" deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and she would experience four or more episodes of deterioration or

decomposition in work or work-like settings. (Id.). According to Ms. Morton, in a work setting, Plaintiff was "marked" in her ability to understand, carry out, and remember instructions, respond appropriately to supervision, respond appropriately to coworkers, perform simple tasks, and perform repetitive tasks. (Id.). She listed headaches, sluggishness, tiredness, lack of sex drive, and forgetfulness as side-effects of Plaintiff's medications. (Id. at 377). With respect to Plaintiff's prognosis, Ms. Morton opined that "even with medications, mood swings are inevitable", and that Plaintiff's illness is a lifelong condition for which there is no cure. (Id.).

Treatment notes dated April 8, July 9, and September 9, 2008 reflect that Plaintiff reported that she was doing well on her medications.[12] (Id. at 384-88). During a December 9, 2008 visit, Plaintiff asked to discontinue BuSpar[13] because it made her dizzy and break out in a cold sweat. Otherwise, she was listed as doing well. (Id. at 383).

On January 16, 2009, Plaintiff was evaluated by Ms. Morton, and diagnosed with moderate bipolar I disorder, hypomanic,

---

[12] During the July visit, Plaintiff reported that Trazodone made her legs restless.

[13] BuSpar is an anti-anxiety medicine that affects chemicals in your brain that may become unbalanced and cause anxiety. See http://www.drugs.com/buspar.html. (Last visited September 27, 2012).

polysubstance dependence in remission, and sinus headaches. (Id. at 381). Ms. Morton noted that Plaintiff experienced mood swings, which were less frequent with medications, hypomania lasting a week, that she feels "down" once a month, and has daily anxiety, which prevents her from driving. (Id.). She was directed to continue with her current treatment plan and to contact a hospital to begin smoking cessation program within the next three months. (Id.).

Plaintiff was seen at SRS on June 2, 2009, and she reported that she no longer wanted to take valium, which was not effective, and that she sleeps well on Trazodone. The treatment notes reflect that Plaintiff was doing well, was stable, and was compliant with her medication. (Id. at 390-91, 401).

Dr. Barnes and Ms. Morton completed a RFC Questionnaire dated June 3, 2009. (Id. at 392-93). In it, they opined that Plaintiff experiences "mild" to "moderate" restrictions in activities of daily living, specifically that she is "unable to manage her own finances," and a "moderate" degree of difficulty in maintaining social functioning. (Id. at 392). Dr. Barnes and Ms. Morton further opined that Plaintiff experienced "marked" deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and she would experience four or more episodes of deterioration or decomposition in work or work-like settings. (Id.).

16

They further opined that in a work setting, Plaintiff had "marked" limitations in her ability to understand, carry out, and remember instructions, and "moderate" to "marked" limitations in her ability to respond appropriately to supervision, respond appropriately to coworkers, perform simple tasks, and perform repetitive tasks. (Id.). Additionally, the side-effects of Plaintiff's medications were listed as headaches, fatigue, dizziness, and forgetfulness. (Id. at 393). They also noted that mood swings would continue even on medications, that Plaintiff is unable to handle workplace stress because stress triggers manic episodes, that Plaintiff is unable to multi-task, that she lacks impulse control when manic, and that her condition is chronic. (Id.).

SRS treatment notes dated September 1, 2009 reflect that Plaintiff reported that she could no longer take Vistaril[14] due to increased anxiety. She was directed to discontinue Vistaril and Artane and to continue Risperdal and Trazodone and to return in six months. (Id. at 403).

---

[14] Vistaril is used to relieve the itching caused by allergies and to control the nausea and vomiting caused by various conditions, including motion sickness. It is also used for anxiety and to treat the symptoms of alcohol withdrawal. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682866.html (Last visited September 27, 2012).

Larry E. Pickel, Ph.D. (hereinafter "Dr. Pickel") examined Plaintiff, at the request of the Agency, on May 8, 2007. (Id. at 316-20). Plaintiff reported to Dr. Pickel that she remembered having problems in her youth and that bipolar disorder runs in her family, and includes her older sister, twin sister, and uncle. At the time of the evaluation, Plaintiff was taking three Trazodone 100 mg daily, one Neurontin 600 mg, and one-half Risperdal 4 mg daily. Plaintiff reported she no longer took Seroquel due to leg problems and was no longer taking Lithium because it "made her mean." (Id. at 317). Plaintiff reported no suicidal thoughts but that she had homicidal thoughts toward her former husband. Plaintiff indicated her main difficulty was short-term memory, lack of concentration, and attention. Plaintiff reported infrequent socialization but strong family support. (Id. at 317-18).

On mental status exam, Plaintiff had an appropriate attitude and affect, she seemed stable, cooperative, talkative, oriented, alert and responsive, and reality-based. (Id. at 318). Dr. Pickel noted that Plaintiff described mood swings; however, no mood swings were observed during the evaluation, and Plaintiff did not appear anxious. (Id.). Her memory seemed intact, and she remembered 5/5 objects in the room after 10 minutes and could remember five digits forward and three digits reversed. (Id.). She was able to solve four out of five math

problems, and Dr. Pickel remarked that she was average on simple proverbs and average on comprehension questions from the Weschler Adult Intelligence Scale. (Id.).

Dr. Pickel diagnosed Plaintiff with bipolar disorder not otherwise specified and recent hypomanic episodes without major depressive disorder. He also considered generalized anxiety disorder, social anxiety type, and ruled out prior history of attention deficit hyperactivity disorder, childhood onset. Dr. Pickel opined Plaintiff's diagnosis was fair. (Id. at 318-19).

Medical consultant Janise Hinson, Ph.D. (hereinafter "Dr. Hinson"), reviewed Plaintiff's medical records at the request of the Agency and on May 31, 2007, she completed a Mental RFC. (Id. at 314-15, 321-338). She opined that Plaintiff is moderately limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual with customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods,

to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Id. at 321-22). She found that Plaintiff is not otherwise significantly limited. (Id. at 321-24).

In a Psychiatric Review Technique completed on the same day, Dr. Hinson diagnosed Plaintiff with Affective Disorder, specifically disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, and Anxiety-Related Disorder. (Id. at 325-28). Dr. Hinson opined that Plaintiff has a moderate degree of functional limitations due to mental illness in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (Id. at 335-338).

The record includes treatment notes from Dr. Linda Haynes dated July 12, 2007 and December 12, 2007. (Id. at 354-58) During the July 12 visit, Plaintiff complained of sinus pain with headache. She also reported racing thoughts, tension, crying, and agitation. (Id. at 357). During the December 12 visit, Plaintiff's chief complaint was sinus pain, with cough and headache. She also reported that she could not afford her Risperdal and was experiencing rages, and that while Klonapin works for her bipolar disorder, she was out of her prescription because her sister stole it. (Id. at 355). Dr. Haynes noted that Plaintiff was anxious but was in no acute distress. (Id. at 355-56).

On October 29, 2007, Robert Cobb, MD (hereinafter "Dr. Cobb") performed a consultative examination of Plaintiff. (Id. at 343-52). He diagnosed Plaintiff with COPD secondary to cigarette smoking and cardiac murmur. (Id. at 345). Dr. Robert Culpepper completed a physical RFC assessment on November 8, 2007, and determined that Plaintiff's COPD was not severe. (Id. at 353).

The record includes a Clinical Assessment of Pain form prepared by Dr. L. Sean Stokes on May 1, 2009. (Id. at 389). In it, Dr. Stokes indicates that Plaintiff experienced pain to such an extent as to be distracting to the adequate performance of work activities and that medication side effects could be

21

expected to be severe and to limit Plaintiff's effectiveness due to distraction, inattention, and drowsiness.  (Id.).

Plaintiff was evaluated by Jack Carney, Ph.D. (hereinafter "Dr. Carney"), at the request of the Agency on July 14, 2009. (Id. at 394-397).  On mental status exam, Plaintiff was oriented times three.  Plaintiff admitted to being irritable due to dental work, and Dr. Carney observed her affect to be commensurate with her mood.  He noted she appeared anxious, and that she described her usual mood as "happy."  (Id. at 395). Plaintiff's memory was intact, and she could recall five digits forward and backward and could recall two objects after five minutes.  Plaintiff was able to describe recent general memories for the day without apparent difficulty, as well as remote memories, such as her oldest child's birthday or the name of the last school she attended.  Plaintiff's intelligence was noted as average.  (Id.).

Dr. Carney administered the Minnesota Multiphasic Personality Inventory-2 Test. The resulting clinical profile indicated that Plaintiff was "likely to be experiencing a great deal of distress and turmoil.  She tends to be very anxious, tense, and restless.  She also seems to be experiencing somatic problems."  (Id. at 396).  The profile further indicated that Plaintiff was neither currently depressed nor manic; however, the profile reflected elevated levels of mood, speech, motor

activity, and irritability even though Plaintiff was on medication. (Id.).

Dr. Carney diagnosed bipolar disorder and polysubstance dependence, in full remission, and opined that her symptoms would likely show improvement, with medication, within six to twelve months. (Id. at 396-97). He noted that long-term prognosis for treatment of bipolar disorder is "always uncertain" and that patients often relapse because they do not like to or do not want to take their medications. (Id. at 397). Dr. Carney observed that Plaintiff seems capable of managing her funds currently, but would need someone to manage her money should she go into a manic phase. (Id.).

With regard to Plaintiff's ability to perform work related activities, Dr. Carney opined that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairment, and that she experienced "marked" limitations in her ability to make judgments on complex work-related decisions, and experienced "moderate" limitations in her ability to understand and remember simple instructions, to carry out simple instructions, to make judgments on simple work-related decisions, to understand and remember complex instructions, to carry out complex instructions, and in her ability to interact appropriately with the public, supervisors, coworkers, and to respond to changes in a routine work setting. (Id. at 398-99).

23

2.  **Issue**

   **Whether the ALJ erred in rejecting the opinions
   of Plaintiff's treating psychiatrist?**

In her brief, Plaintiff asserts that the ALJ erred in not accepting the opinions of her long-time treating mental health practitioner, Dr. Barnes.  Specifically, Plaintiff alleges that the ALJ improperly relied on the opinions of Dr. Carney and Dr. Hinson.  Plaintiff points to the June 28, 2007 Disability Determination form signed by both Dr. Barnes and Ms. Morton, the February 28, 2008 mental RFC Questionnaire prepared by Ms. Morton, and the June 3, 2009 mental RFC signed by Dr. Barnes and Ms. Morton.  According to Plaintiff, the ALJ's reasons for giving little weight to Dr. Barnes' June 3, 2009 mental RFC "fall far short of being adequate and persuasive," and do not constitute good cause.  Further, Plaintiff argues that the ALJ failed to recognize that her disorder would likely "wax and wane over time."  Plaintiff also alleges that she is "presumptively disabled based upon meeting the requirements of ¶12.04 of the Listings."  (Doc. 14).

In opposition, the Commissioner argues that the ALJ properly gave little weight to Dr. Barnes' opinions and identified good cause for doing so because they were not well-supported by his treatment notes or by the evidence of record. Additionally, the Commissioner contends that social workers are

not valid medical sources under the Social Security Rulings; and thus, Ms. Morton's mental RFC dated February 28, 2008 was not deserving of significant weight.    The Commissioner further states that Plaintiff has the burden of showing she meets a Listing, but she has not developed or explained how the Listing requirements have been met; thus, any argument that she met a Listing has been waived. (Doc. 15).

Case law provides that "[t]he ALJ must generally give the opinion of a treating physician 'substantial or considerable weight' absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed. Appx. 880, 883 (11th Cir. 2008).   See also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Generally, an ALJ commits reversible error where he fails to articulate the reason for giving less weight to the opinion of a treating physician.   MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986); Crawford v. Comm'r of Soc. Sec., 363 F. 3d 1155, 1159 (11th Cir. 2004)(per curiam)(the ALJ must accord

25

substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary.).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion. See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984). Of course, it is the ALJ's duty, as finder of fact, to choose between conflicting evidence, and he may reject the opinion of any physician when the evidence supports a finding to the contrary. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam), citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion") (citation omitted); Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23 (S.D. Ala. Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion of any

physician when the evidence supports a finding to the contrary."). Based upon a careful review of the record, the undersigned finds that substantial evidence supports the ALJ's decision not to assign great or controlling weight to the opinions contained in Dr. Barnes' assessments dated June 28, 2007 and June 3, 2009.

As noted above, the ALJ concluded that Plaintiff has the severe impairment of bipolar disorder but determined that she was not disabled. In doing so, he considered the medical opinions of Dr. Carney, Dr. Hinson, Dr. Barnes, and Dr. Stokes.[15] The ALJ gave little weight to the opinion contained in Dr. Barnes' June 3, 2009 mental RFC questionnaire and found the following:

---

[15] The ALJ considered Ms. Morton's opinions in accordance with acceptable Regulations. Social workers, like Ms. Morton, are not listed as acceptable medical sources for the purpose of establishing an impairment; however, "evidence from other sources [may be used] to show the severity of [the claimant's] impairment(s) and how it affects [the] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (stating other sources may include "therapists, social workers"). Pursuant to SSR 06-03p, only "acceptable medical sources" can give ... medical opinions." 2006 SSR LEXIS 5, *3 (2006) (citing 20 C.F.R. 404.1527(a)(2) and 416.927(a)(2)). However, "[o]pinions from [nurse practitioners, physician assistants, and licensed clinical social workers], who are not technically deemed 'acceptable medical sources' ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 SSR LEXIS 5, *8.

Dr. Barnes opined the claimant is markedly limited in her ability to understand, carry out and remember instructions. He also opined the claimant is moderately to markedly limited in her ability to: respond appropriately to supervision in a work setting; respond appropriately to coworkers in a work setting; perform simple tasks in a work setting; and perform repetitive tasks in a work setting. (Exhibit 16F) The undersigned gives little weight to this opinion. This opinion is not well-supported by Dr. Barnes' treatment notes, which indicate that claimant is doing well on medications and has few (and short-lived) manic episodes while on medications. Dr. Barnes has not made significant changes to the claimant's medications. He has not attempted new or different treatment modalities (which suggest he is satisfied with the claimant's response to her current treatment). The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly as limited as the doctor opined. This opinion is inconsistent with the opinions of Dr. Carney and Dr. Hinson which are less limiting. This opinion is inconsistent with the claimant's testimony and her activities of daily living. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their doctors, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Tr. 21).

In this case, it is clear that ALJ did not reject all of Dr. Barnes' opinions.  It is clear that he considered and relied heavily on the treatment records from SRS, including Dr. Barnes' treatment notes.  He concluded however that the restrictive limitations contained in Dr. Barnes' June 2009 mental assessment were not supported by his treatment notes, which repeatedly reflect that Plaintiff is doing well on medications and has had only one, short manic episode while on prescribed medications since 2004.[16]  See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ permitted to disregard a treating physician's opinion regarding limitations, when no limitations were stated in the physician's treatment notes).  As noted supra, Dr. Barnes

---

[16] While the ALJ did not specifically address the abilities questionnaire prepared by Ms. Morton and Dr. Barnes on June 8, 2007, based on the record before the Court, the undersigned concludes that the ALJ considered the opinion and rejected it. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision ... is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'") (citation omitted). In the questionnaire, Dr. Barnes and Ms. Morton noted that Plaintiff's abilities to function in a work setting were "poor" in almost all aspects.  The questionnaire indicates that Plaintiff "has many interpersonal conflicts," "has extreme memory problems," and "forgets appointments," among other things.  However, the record, specifically the treatment notes from SRS, does not support such extreme limitations, and the ALJ reasonably rejected the opinion for the reasons set forth supra.

and Ms. Morton opined that Plaintiff was "markedly" limited in
certain areas of functioning, including in concentration,
persistence, and pace, and in her ability to understand, carry
out, and remember instructions. Dr. Barnes and Ms. Morton
further opined Plaintiff was "moderately" to "markedly" limited
in her ability to respond appropriately to coworkers, perform
simple tasks, and perform repetitive tasks in a work setting.
The ALJ acknowledged these opinions, and in rejecting them,
found that the extreme limitations were at odds with the
treatment notes, which contain repeated notations that Plaintiff
was "stable," and "doing good" or "doing well" on medications.

The record reflects that in November 2004, Plaintiff
received treatment at SRS for "moderate" bipolar disorder. She
was treated with therapy and medications. (Tr. 241, 245-54).
The SRS treatment notes for 2005, 2006, and most of 2007
indicate that Plaintiff's medications were occasionally adjusted
due to effectiveness or side effects such as restless legs but
that they controlled her manic symptoms, and she was routinely
noted as "stable" and "doing well." Plaintiff was continuously
compliant with her medication regime until December 2007 when
she became manic and experienced a drug relapse, which lasted a
week and a half. Plaintiff reported that her manic episodes
previously lasted for months; however, the 2007 episode was
brief in comparison. (Id. at 361-62). Plaintiff's treatment at

SRS did not change as a result of the relapse, and she was directed to continue to see Dr. Barnes to monitor her medications twice yearly and to continue to see a therapist at SRS. From that point forward and up until the date of the June 8, 2009 hearing, Plaintiff was noted as compliant with her medications, with occasional adjustment, and was repeatedly observed as "doing well" and "stable."

Given that throughout his treatment records, Dr. Barnes noted that Plaintiff was stable and doing well on medication, except for one brief relapse, and that her course of treatment never materially changed, the record evidence, or lack thereof, in Dr. Barnes' treatment notes do not support Plaintiff's proffered functional limitations. Accordingly, good cause exists for the ALJ's rejection of the opinions contained in Dr. Barnes' assessment because they were not supported by either Dr. Barnes' treatment notes nor the other record evidence.

Although the ALJ did not mention the evaluation completed by Dr. Pickel on May 8, 2007, Dr. Pickel observed that on exam, Plaintiff seemed stable, cooperative, and oriented, and that she did not appear anxious. While Plaintiff's main complaint was short-term memory, lack of concentration, and attention, Dr. Pickel noted Plaintiff's memory seemed intact, and she was able to remember 5/5 objects after 10 minutes and five digits forward

and three digits backward. Dr. Pickel also opined that Plaintiff's diagnosis was "fair."

Further, the Mental RFC Assessment prepared by Dr. Hinson on May 31, 2007, which reflected Plaintiff's abilities as of that date, found that Plaintiff had no "marked" limitations in any of the twenty areas of functioning she was asked to assess, and she opined that Plaintiff was capable of working and was able to understand and carry out instructions and could maintain attention and concentration adequately for two-hour periods within an eight-hour workday.  She further observed that Plaintiff could complete a normal work-week without excessive interruptions from psychological symptoms, interact appropriately with coworkers and supervisors on a limited basis, and adapt to a work setting.  (Id. at 323).

In addition, Plaintiff reported to Dr. Carney that her medications control her symptoms; however, she did not like taking them at times.  She further described her usual mood as "happy."  (Id. at 395).  Like Dr. Pickel's examination over two years earlier, Plaintiff's memory was intact on examination. While Dr. Carney opined that Plaintiff was "markedly" limited in her ability to make judgments on complex work-related decisions, he determined she was only "moderately" limited in her ability to understand, to remember, and to carry out simple and complex instructions.  (Id. at 398-400).

32

Additionally, Plaintiff testified at the June 8, 2009 hearing that the medication controls her manic symptoms and that she had not experienced "true mania" since October 2004. (Id. at 58). She further testified she experienced a "slight" case of "mania" in December 2007 that lasted less than two weeks, which was significantly shorter than her previous manic episodes. (Id. at 59). Plaintiff also reported that while she still has some anxiety, she is stable on her medications, which "keep [her] on track" (id. at 64) and that she could function in her everyday activities, including doing laundry, keeping her home clean, reading books, and taking care of her kids. (Id. at 57-65). She later testified at a hearing on October 26, 2009, that she typically takes a nap during the day due to the sluggishness, tiredness, sleepiness, and headaches caused by her medications. She also acknowledged that she is able to function without a nap when she has things to take care of. (Id. at 32, 37).

A review of the treatment records reveal a couple of instances since Plaintiff's 2004 diagnosis in which she complained about the side-effects of her medications, and appropriate adjustments were made. Overall, the records reflect that Plaintiff has had a good response to her medications and that she is doing well notwithstanding the cyclical nature of her bipolar disorder. The undersigned finds that that the

record demonstrates that the ALJ properly considered and balanced the medical evidence and other evidence of record, including that supporting and contradicting Plaintiff's disability claim. This Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, but rather, must give deference to the Commissioner's decision if it is supported by substantial evidence. See Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Given that the ALJ considered the record evidence, and that substantial evidence supports the ALJ's determination rejecting the marked limitations contained in Dr. Barnes' assessments, as well as his ultimate conclusion that Plaintiff is not disabled, the Court finds that the ALJ's decision is due to be affirmed.

## V. Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for a period of disability and disability insurance benefits, be **AFFIRMED.**

**DONE** this 27th day of September, **2012.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**